Alexander A. AZAR, Plaintiff-Appellee,

v.

UNITED STATES POSTAL SERVICE, Defendant-Appellant.

No. 84–2555.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1985.

Decided Nov. 27, 1985.

Rehearing and Rehearing En Banc Denied Feb. 25, 1986.

Carlene V. McIntyre, Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant.

T. Russell Strunk, Jr., Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and WYATT, Senior District Judge.*

FLAUM, Circuit Judge.

This case involves the application of equitable estoppel against the United States Postal Service. The plaintiff-appellee, Alexander A. Azar, won a judgment for $7,500 from the Postal Service on the theory that the representations its two employees made to Azar estopped the Postal Service from relying on its Express Mail insurance limits. The Postal Service appeals, claiming that the requisite elements for the application of equitable estoppel are not present. We affirm.

## I.

The dispute concerns a package containing a $7,500 watch that Azar entrusted to the Postal Service's Express Mail Next Day Service.[1] The facts of the dispute, as found by the district court, are as follows:

Azar had never used an air express service, and in particular, Azar had never used Express Mail to send packages. Azar approached the window at the Main Post Office in Fort Wayne, Indiana and spoke with a clerk, later identified as Fred Dyar. Azar informed the clerk that he wished to send the package he had in his hand via "Air Express." The postal clerk handed Azar a form to fill out.... The form ... contained small print which explained the service guarantee of Express Mail Service and the insurance coverage of Express Mail Service. Azar is far sighted and is unable to read fine print without his glasses. Azar did not

have his glasses on at the time he filled out the Express Mail form on May 17, 1983. The form reflects Azar's name and address and the name and address of the [addressee,] Fort Worth Gold and Silver Exchange in Fort Worth, Texas.

Azar informed the postal clerk that he wanted to insure the package; Azar had his billfold in his hand ready to pay for insurance coverage. The postal clerk informed Azar either that Azar did not need insurance or that he was covered under the terms of the Express Mail Service. Azar pressed the postal clerk on the issue, questioning the clerk if he was sure Azar did not need to purchase insurance. The postal clerk turned to a second postal clerk and asked the other clerk whether Azar needed insurance. The second clerk asked Azar if the package was worth over $50,000.00. Azar replied no. The first postal clerk, who was serving Azar, stated that Azar therefore had no need of insurance. The clerks involved appeared to be and were mature and experienced. Azar would have questioned the clerks involved more closely if the clerks had appeared younger or less experienced. The postal clerks intended Azar to act upon their statements. Azar did not feel that he could press the matter further with the clerks.

Azar reasonably accepted and relied upon the representations of the postal clerks at the windows on May 17, 1983. Azar would, under no circumstances, have sent the package uninsured. The postal clerk finished filling out the Express Mail form, gave Azar his receipt, and Azar left the Post Office. Azar never informed the window clerks what was contained in the package or its worth. He did not inform the postal clerk of these facts because he believed the information irrelevant due to the representations to him that the package would be

---

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

1. Express Mail is an overnight delivery service engaged in direct competition with private delivery services such as Federal Express and Purolator.

adequately insured if the items therein carried a value of less than $50,000.00.

The Express Mail form which Azar filled out contained a clear discussion of the insurance coverage for items sent via Express Mail. Parcels shipped by Express Mail which contain merchandise are insured only up to a maximum of $500.00. Azar's package contained merchandise. Nonnegotiable documents are insured up to $50,000.00 per piece. Although the form Azar filled out contained a discussion of insurance coverage under Express Mail delivery, Azar, without the benefit of his glasses, could not read small print. The insurance coverage details are in small print. Azar had no knowledge of the terms of the insurance contract other than that information given to him by the clerks at the windows.

The postal clerk involved had viewed a ten minute film on Express Mail several years earlier, but could not remember being trained about or informed of insurance coverage for Express Mail Service. Postal clerks are expected to know their jobs and the information necessary to carrying out their duties.

Several days later, the Fort Worth Gold and Silver Exchange contacted Azar and informed him that the package had not arrived and that the Exchange had another buyer for the watch and needed the watch. Azar contacted Eugene Gabriel, Postmaster of the Fort Worth Post Office, and informed him of the problem. Gabriel was very helpful to Azar, assisting Azar in filling out a tracer for the lost package and instituting security checks. The tracer filled out on May 25, 1983, contains the following remark by Mr. Azar: "Tried to insure article but was told by clerk and verified by clerk next to him that *air express* articles insured up to $50,000.00." ... Azar filed a claim on the insurance policy arising in connection with the Express Mail package seeking reimbursement for the $7,500.00 which he paid to the Fort Worth Gold and Silver Exchange. Under what it believed was the correct interpretation of the contract of insurance with Azar, the Postal Service tendered payment of $500.00. Azar retained the check, but did not cash it.

*Azar v. United States Postal Service*, 590 F.Supp. 948, 949, 950–51 (N.D.Ind.1984).

After finding these facts, the district court applied a test originally established by the Ninth Circuit in *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942 (9th Cir.1981), which we adopted in a case involving facts nearly identical to the instant dispute, *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir.1982). That test sets forth the following requirements for determining when equitable estoppel applies to an agency of the United States government:

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury. In addition, the Ninth Circuit noted that "the government's action upon which estoppel is to be based, must amount to affirmative misconduct," which that court defined as "something more than mere negligence."

*Portmann*, 674 F.2d at 1167 (*quoting TRW*, 647 F.2d at 950–51).

The district court analyzed the facts of the dispute in light of the *Portmann* test's first four prongs, and found that all four requirements were satisfied. *Azar*, 590 F.Supp. at 954. The court noted, however, that there was some dispute as to whether the *Portmann* test imposed a fifth requirement, that of showing affirmative misconduct. After examining the relevant case law the court concluded that affirmative misconduct need not be demonstrated in cases where, as here, the government acts

in a proprietary, as opposed to a sovereign, capacity.[2] *Id.* at 954–55.

## II.

A brief discussion of estoppel is necessary in order to place this case in its proper framework. We explained in *Portmann* that "[t]he doctrine of equitable estoppel precludes a litigant from asserting a claim or defense which might otherwise be available to him against another party who has detrimentally altered [his] position in reliance on the former's misrepresentation or failure to disclose some material fact." 674 F.2d at 1158. The classic statement of the requisites for equitable estoppel is encapsulated in the first four parts of the *Portmann* test, *see supra* p. 1268. *See also* III J. Pomeroy, Equity Jurisdiction § 805, at 191–92 (5th ed. 1941).

Traditionally, courts would not permit estoppel to lie against the federal government or its agencies. *See, e.g., Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 383–84, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947). Recently this absolute bar has been relaxed in certain narrowly-defined circumstances. We decided in *Portmann* that one such circumstance is where the Postal Service's Express Mail operations are involved. 674 F.2d at 1168–69. The Postal Service in this case, therefore, does not challenge the propriety of applying estoppel to a governmental agency, but rather the district court's finding that the traditional four elements of estoppel are satisfied, as well as its holding that a fifth element of affirmative governmental misconduct need not be considered.

## A.

■ The Postal Service contends at the outset that the third and fourth elements of the estoppel test are not present because Azar was not "reasonably ignorant" of the true facts and did not reasonably rely on the postal clerks' advice. With regard to

the third element (the requirement that the party asserting estoppel had been ignorant of the facts), we conclude that the case law imposes no reasonableness inquiry on the court. Rather, the factor of reasonableness is considered solely with respect to the fourth part of the test, which concerns the party's reliance. This is apparent from those cases that discuss the party's opportunity or failure to obtain the true facts: each does so in the context of the reasonableness of the party's subsequent reliance. *See, e.g., Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984); *Woodstock/Kenosha Health Center v. Schweiker*, 713 F.2d 285, 290 (7th Cir.1983); *NLRB v. J.D. Industrial Insulation Co.*, 615 F.2d 1289, 1293–94 (10th Cir.1980); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104–05 (9th Cir.1960); *see also* III J. Pomeroy, § 810, at 219.

■ The requirement of ignorance, therefore, is a purely factual one, and we are bound to the district court's determination on the question unless we find it clearly erroneous. Fed.R.Civ.P. 52(a). Upon a review of the record we are convinced that the district court did not commit clear error when it found, based on Azar's undisputed testimony that he could not read the form's fine print, that Azar was ignorant of the Express Mail insurance limits. Accordingly, we hold that Azar satisfied the third element of the estoppel test.

■ In light of the above, it is clear that the fourth part of the test, that of reasonable reliance, always involves the more difficult inquiry. The district judge not only must consider several facts in its determination of reasonableness, but also must apply to those facts an objective legal principle. Our survey of this circuit's decisions reveals that determinations of reasonable reliance in the context of estoppel general-

---

**2.** The district court went on to find that even if *Portmann* required proof of affirmative misconduct in all instances, the facts of this case are sufficient to meet that requirement. The Postal Service appeals this finding, claiming that the conduct of its clerks amounted to negligence or

carelessness, at worst. Because we hold that affirmative misconduct need not be shown in this situation, we decline to speculate about the level of misconduct that standard requires and whether that level was present here.

ly have been treated as factual findings subject only to clearly erroneous review. *See, e.g., Werner v. Xerox Corp.*, 732 F.2d 580, 582–83 (7th Cir.1984). Because we see no reason on these facts to give any less deference to the district court's finding of reasonableness in the context of estoppel against the government, we will apply to that finding the traditional clearly erroneous standard of review.[3]

We cannot conclude that the district court's finding of reasonable reliance was clearly erroneous. The essentially undisputed testimony before the court revealed that Azar, unable to ascertain insurance information for himself, turned for help to employees of the vendor whose services he was purchasing. This is certainly not an unreasonable act. Moreover, even after the first clerk informed Azar that he did not need insurance, Azar pressed the matter until another clerk was consulted, before he was satisfied that he could rely on the information. In the face of this testimony, we are convinced that it was not clearly erroneous for the district court to find that Azar's ultimate reliance was reasonable.

■ The Postal Service makes two arguments in support of its assertion that the reasonable reliance element is not satisfied here. The Postal Service first contends that reasonable reliance can never be established if the party has the means of ascertaining the true facts. We agree that a party's failure to discover the true facts may be *one* factor, and in some cases the key factor, in the determination of reasonableness. The Service's proposed per se rule sweeps too broadly, however, for it would prevent the application of estoppel in nearly every instance. The very essence of estoppel is that it prohibits an individual or entity from asserting an otherwise good

defense because of conduct that effectively *precluded* the complaining party from learning the true facts. The real inquiry in most instances, then, is whether the complaining party acted *reasonably* when he relied on those he now seeks to estop rather than employing some other means to obtain the information. The district court carefully analyzed the facts here and found that Azar's reliance, particularly after repeated inquiries, on "two mature experienced clerks" was reasonable under all of the circumstances. *Azar*, 590 F.Supp. at 953–54. We concur with this finding.

■ The Postal Service's second argument is closely related. The Service claims that reliance on the advice of government agents never is reasonable where rules or regulations exist containing the true facts. Again, this argument sweeps too broadly. In reality, this is just another way of saying that estoppel cannot lie against the government. We have already decided that the Postal Service can be estopped, at least where its Express Mail service is involved, so this argument no longer has any force. We conclude, therefore, that the district court's finding of reasonable reliance was not clearly erroneous, and accordingly we affirm its determination that Azar satisfied the four traditional elements of estoppel.

## B.

The Postal Service's second argument concerns the additional element that many courts incorporate into the estoppel test where the government is involved: the requirement that the government be found to have engaged in "affirmative misconduct." *See, e.g., Portmann*, 674 F.2d at 1167; *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942, 951 (9th Cir.1981). This requirement apparently is drawn from sug-

---

**3.** This is not to say that *de novo* review never would be appropriate in this context. The Ninth Circuit recently suggested that *de novo* review of questions traditionally allocated to the clearly erroneous standard may serve the concerns of judicial administration, where those questions involve the consideration of value-laden principles. *See United States v. McConney,*

728 F.2d 1195, 1202–03 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). In the future, courts may well determine that where parties seek to estop the federal government in its other capacities, circumstances demand *de novo* review of trial court findings of reasonable reliance.

gestions of the United States Supreme Court to the effect that the government "may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). In several cases the Supreme Court, while refusing to elaborate on the level of misconduct needed before the government can be estopped, to some extent has used the phrase "affirmative misconduct" as a touchstone. *See Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *Montana v. Kennedy,* 366 U.S. 308, 314–15, 81 S.Ct. 1336, 1340–41, 6 L.Ed.2d 313 (1961).

In the present case, the district court held after a thoughtful discussion that affirmative misconduct need not be demonstrated where the government acts in a proprietary capacity. *Azar,* 590 F.Supp. at 954–55. While we will not base a test solely on the distinction between the government's proprietary and sovereign functions, *see Portmann,* 674 F.2d at 1161–62, we hold that affirmative misconduct is not a requirement in the unique situation in which a party seeks to estop the Postal Service from relying on Express Mail insurance limits. Congress has manifested its intent, acknowledged by the Supreme Court in *Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 2556, 81 L.Ed.2d 446 (1984), and by this court in *Portmann,* 674 F.2d at 1168, to create in the Postal Service a nearly self-sustaining enterprise competitive with other commercial ventures. As the Supreme Court noted in *Franchise Tax Board,* "we must presume that the Service's liability is the same as that of any other business." 104 S.Ct. at 2554. This is particularly crucial with respect to the Express Mail service, which competes directly with commercial delivery services. Congress's intent to create a competitive enterprise would be ill-served by a rule insulating the Service from the same kind of liability shouldered by its competitors. As we noted in *Portmann,* "the dubious privi-

lege of not being bound by the representations of its employees in routine commercial transactions" would reflect poorly on the Service's reputation as a provider of next day delivery services. *Id.* at 1169. Certainly, if we adopted the Postal Service's position, consumers knowing of the Service's effectively absolute immunity would prefer to deal with businesses governed by ordinary principles of commercial law. For this reason we hold that where a party seeks to estop the Postal Service in connection with its Express Mail Service, only the traditional four parts of the test for estoppel need be shown.

The narrow reach of our holding, however, should not be overlooked. Not every governmental agency that transacts business in the marketplace or engages in competitive efforts will necessarily be subject to the full rigors of private law principles. We limit the holding we reached above solely to the circumstances before us in the instant case.

### III.

The judgment of the district court accordingly is AFFIRMED.