UNITED STATES POSTAL SERVICE, Plaintiff,

v.

UNIVERSITY PUBLISHING CORPORATION, Defendant.

No. IP 92–414–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 15, 1993.

Winfield Ong, Office of U.S. Atty., Indianapolis, IN, for plaintiff.

Geoffrey M. Grodner, Mallor Clendening Grodner & Bohrer, Bloomington, IN, for defendant.

## MEMORANDUM ENTRY

BARKER, District Judge.

The University Publishing Corporation ("UPC") collects and sells alumni directories. It creates demand for its product by contracting with universities to solicit orders via mail from alumni who then respond not only with requests for the directories but also with contributions. UPC takes a fixed fee from all contributions resulting from its mailings. The United States Postal Service ("USPS") believes that UPC wrongly availed itself of the third-class, bulk mailing rate, which requires a special permit that UPC lacks but which many of its clients have. According to the USPS, postal regulations do not allow an entity such as UPC to use the special rate when it shares in the costs, risks, and benefits of the mailing. The USPS moves the Court to enter summary judgment in its favor and find that UPC is liable to it in the amount of $211.225.25 for mailings it made using the third-class, bulk mailing rate between January, 1988, and July, 1989. UPC disputes the amount of the deficiency and asserts the affirmative defenses of estoppel, laches, consent, and accord and satisfaction. USPS's motion is granted in part and denied in part.

Because the Chicago Rates and Classification Center ("Classification Center") already has rejected UPC's appeal requesting that the deficiency assessment be set aside, procedurally this matter is before the Court as an appeal from an agency adjudication. Pursuant to the Administrative Procedure Act, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary [or] capricious...." 5 U.S.C.A. § 706(2)(A). This standard applies to "informal" agency adjudications, such as the one at issue here. *See United States v. An Article of Device ... Diapulse*, 768 F.2d 826, 829 (7th Cir.1985). In its findings, the Classification Center explained:

Section 625.52, Domestic Mail Manual, states that cooperative mailings may be made at the special bulk rates *only* when each of the cooperating organizations is individually authorized to mail at the special rates at the post office where the mailing is deposited. A cooperative mailing is a mailing in which one or more parties cooperate with an authorized nonprofit mailer to share the cost, risk, and benefits of the mailing.

. . . .

Postal regulations do not allow matter associated with joint business ventures between an authorized nonprofit organization and a commercial firm to be mailed at the special rates. Typically, with a joint business venture, both parties contribute something (a list of names and use of the special rate authorization by the nonprofit

party, and overall coordination of the fundraising effort by the commercial party) and both parties take something out (a share of the proceeds/profits).

In our opinion, the mailings in question were cooperative ventures. Both your forprofit corporation and the nonprofit organizations shared in the cost, risk, and benefits of these mailings. UPC gained considerably through the sale of their business product, the alumni directories. Because UPC is not an authorized nonprofit organization, postage on the mailings was due at the applicable regular bulk rate.

*See* Exhibit 5, Administrative Record, Letter to H. David Hilliard from Robert J. Reeves, Rates and Classification Center, October 11, 1990, at 1–2 ("USPS Final Decision"). Section 625.521 of the Domestic Mail Manual ("DMM") states:

Cooperative mailings may be made at the special bulk rates only when each of the cooperating organizations is individually authorized to mail at the special bulk rates at the post office where the mailing is deposited. Cooperative mailings involving the mailing of any matter on behalf of or produced for an organization not itself authorized to mail at the special bulk rates at the post office where the mailing is deposited must be paid at the applicable regular rates. . . .

DMM § 625.521 (1992). Although DMM § 625.52, which is captioned "Cooperative Mailings", does not define "cooperative mailing", the USPS construes that term to mean "a mailing in which one or more parties cooperate with an authorized nonprofit mailer to share the cost, risk, and benefits of the mailing." USPS Final Decision, at 1. This Court is required to give great deference to an agency's interpretation of its own regulations. " 'An agency's construction of its own regulation binds a court in all but extraordinary cases.' " *Hoffman Homes, Inc. v. Administrator, U.S.E.P.A.,* 999 F.2d 256, 260 (7th Cir.1993), *citing, Homemakers N. Shore, Inc. v. Bowen,* 832 F.2d 408, 411 (7th Cir. 1987); *see also Peabody Coal Co. v. Director, OWCP,* 972 F.2d 178, 183 (7th Cir.1992). The USPS definition of "cooperative mailing" is reasonable and the Court will not disturb

it. Nor can the Court say that the USPS's application of that definition and of DMM § 625.52 to the facts of this case is arbitrary and capricious. DMM § 625.521 describes when cooperative mailings may be made using the special bulk rates. According to UPC, it "receives the first $15.00 of every alumni contribution to defray the costs incurred in producing and mailing the letters and directories." Brief of UPC, at 2. This billing practice places the UPC mailings squarely within the definition of a "cooperative mailing" because UPC's revenues are linked to the success of the mailings in generating alumni contributions. DMM § 625.-521 requires that each cooperating organization be individually authorized to mail at the special bulk rate. UPC lacks such authorization.

█ UPC contends that even if liability can be established, its affirmative defenses of estoppel, consent, laches, and accord and satisfaction should prevent the USPS from collecting the deficiency against it. UPC believes that the USPS's acceptance of its mailings over eighteen months estops it from denying that it agreed to process the mailings at the lower rate. This argument is indistinguishable from the UPC's defense of consent, and the Court will dispose of these arguments together. UPC is quick to point to the Seventh Circuit's decision in *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982), where the court allowed the plaintiff to invoke estoppel against the USPS based on misrepresentations made by a postal employee regarding the USPS's Express Mail service. But the facts of this matter are readily distinguishable because the record contains no evidence that anyone at the USPS engaged in conduct that was "done with the intention, or at least with the expectation, that it will be acted upon by the other party, and, thus relying, he must be led to act upon it." *Portmann,* 674 F.2d at 1164 n. 29, *citing,* J. Pomery, Equity Jurisprudence § 805 at 191–92. Proof of such conduct is a necessary element of estoppel. *See id.* While the Seventh Circuit has held that affirmative misconduct "is not a requirement in the unique situation in which a party seeks to estop the Postal Service from relying on Express Mail insurance limits," *Azar v. Unit-*

ed States Postal Service, 777 F.2d 1265, 1271 (7th Cir.1985), this matter does not involve express mail, a domain in which the USPS competes directly with private enterprises. The rationale for this holding is that "Congress's intent to create a competitive enterprise would be ill-served by a rule insulating the Service from the same kind of liability shouldered by its competitors." *Id.* In addition, this is not a situation where the USPS communicated its intentions or expectations, as occurred in *Portmann* or *Azar.* UPC argues that the USPS's acceptance of its mailings without warning that they were subject to a higher rate is enough to create an estoppel. But this Court is at a loss to see how the silent acceptance of letters for mailing indicates the kind of intentional or expectant conduct that is an element of estoppel. In *Portmann,* the Seventh Circuit examined the U.S. Supreme Court's holding in *United States Immigration and Naturalization Service v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) and noted that: "*Hibi* was not a strong case for invoking estoppel against the government, since not all the requisite elements of an equitable estoppel were present. In particular, there was no misrepresentation by the government or its agents, but merely a failure to inform Hibi of his rights . . . ." Although the court did not foreclose the possibility that silence could create an estoppel, this Court concludes that the evidence adduced in the record before it is not sufficient to withstand the USPS's motion for summary judgment; UPC has pointed to nothing in the record to establish that the USPS acted with the intent or the expectation that UPC would conclude that *it* was entitled to use the lower mailing rate based on the non-profit status of its clients. That the USPS approved the applications of UPC's clients to mail materials from the Bloomington, Indiana Post Office adds nothing because the application does not advise the USPS whether the printer or agent will "share the cost, risk, and benefits of the mailing." USPS Final Decision, at 1.

While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct.

2548, 2554, 91 L.Ed.2d 265 (1986), the non-moving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). UPC has failed to meet this burden on its defenses of estoppel and consent.

■ The result is the same for UPC's laches and accord and satisfaction defenses. While the Seventh Circuit has held that "laches is generally and we think correctly assumed to be applicable to suits by government agencies as well as by private parties", *N.L.R.B. v. P\*I\*E Nationwide, Inc.,* 894 F.2d 887, 894 (7th Cir.1990), UPC has not come forward with any evidence showing that the USPS knew of UPC's billing arrangements with its clients prior to the conclusion of its investigation. *See Matson v. Matson,* 569 N.E.2d 732, 733 (Ind.App. 5 Dist.1991) ("Laches requires the presence of three elements: (1) inexcusable delay in asserting a right; (2) an implied waiver arising *from knowing acquiescence* in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party.") (emphasis added). The accord and satisfaction defense fails as a matter of law because a postal clerk lacks the authority to accept less postage than the postal regulations require. " 'Of this it is enough to say that the United States is neither bound nor estopped by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit.' " *Office of Personnel Management v. Richmond,* 496 U.S. 414, 420, 110 S.Ct. 2465, 2469, 110 L.Ed.2d 387 (1990), *citing, Utah Power & Light Co. v. United States,* 243 U.S. 389, 408–409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917).

■ The only remaining issue then is damages. The USPS originally tried to collect over $300,000.00 from UPC but discovery revealed that the USPS had made an error

in its calculations. UPC contends that the USPS also has mistakenly included "courier mailings" in the $211,225.25 deficiency assessment which the USPS presently seeks. According to UPC, these are mailings where it prepares materials for clients and then delivers them to the post office, acting as little more than a courier. Defendant's Brief, at 3. As the Court understands it, these are not cooperative mailings since UPC does not share in any "risks, costs, or benefits" and instead collects a fixed sum for a service. The Court concludes that a genuine issue of material fact remains regarding the amount of the deficiency which UPC owes to the USPS.

The Plaintiff's motion for summary judgment is granted in part and denied in part.

It is so ORDERED.