**Arieh GILDOR, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Cobleskill, NY, David DeGeorge, of the Post Office in Cobleskill, NY, Mark Harbison,\* of the Post Office in Cobleskill, NY, I.P. Mingo, Defendants–Appellees.**

No. 05–4282–cv.

United States Court of Appeals, Second Circuit.

May 3, 2006.

son" to "Harbison" in the official caption.

Arieh Gildor, Summit, NY, for Plaintiff–Appellant, pro se.

Paula Ryan Conan, Assistant United States Attorney, for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, NY, for Defendants–Appellees.

PRESENT: Hon. PIERRE N. LEVAL, Hon. B.D. PARKER, Circuit Judges, and Hon. WILLIAM K. SESSIONS III, Chief District Judge.[1]

1. The Honorable William K. Sessions III, Chief United States District Court Judge for the District of Vermont, sitting by designation.

## SUMMARY ORDER

Plaintiff–Appellant Arieh Gildor, *pro se,* appeals from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge* ), granting summary judgment to Defendants–Appellees on Gildor's tort and contract claims. *See generally Gildor v. U.S. Postal Serv.,* 376 F.Supp.2d 284 (N.D.N.Y.2005). We assume familiarity with the underlying facts and procedural history.

We review a grant of summary judgment *de novo,* construing the record in the light most favorable to the non-moving party. *See Devlin v. United States,* 352 F.3d 525, 529 (2d Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). When, as here, a litigant is proceeding *pro se,* we construe that litigant's appellate briefs and other pleadings liberally and read such submissions to raise the strongest arguments they suggest. *See Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

■ We note at the outset that the district court properly dismissed Gildor's claims against the individual postal employees, *see Gildor,* 376 F.Supp.2d at 291, because it is evident that the employees acted in the scope of their authority within the United States Postal Service ("Postal Service"), and not in their individual capacities. *See* 28 U.S.C. § 2679(b)(1) (stating that an action brought directly against a federal employee based on the "negligent or wrongful act or omission" of such employee while acting within the scope of employment is "precluded"). We address each of Gildor's claims against the Postal Service in turn below.

## I. Tort claims

"It is ... 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.' " *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("[t]he doctrine of sovereign immunity is jurisdictional in nature"). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.,* waives the federal government's sovereign immunity against certain tort claims arising out of the conduct of its employees. *See* 28 U.S.C. § 1346(b)(1); *see. also Syms v. Olin Corp.,* 408 F.3d 95, 107 (2d Cir.2005); *Devlin,* 352 F.3d at 530.

However, Congress carved out explicit exceptions to this waiver of sovereign immunity, including the "postal matter exception," which preserves sovereign immunity for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b); *see Dolan v. U.S. Postal Serv.,* — U.S. —, —, 126 S.Ct. 1252, 1256, 163 L.Ed.2d 1079 (2006); *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). The federal government also retained sovereign immunity for "[a]ny claim arising out of ... misrepresentation." 28 U.S.C. 2680(h); *see Anglo–American & Overseas Corp. v. United States,* 242 F.2d 236, 237 (2d Cir.1957) (per curiam) (both negligent and intentional misrepresentation claims are barred by sovereign immunity); *Devlin,* 352 F.3d at 543.

■ Accordingly, Gildor's tort claims alleging negligence on the part of the Postal Service in mis-delivering his package, and his tort claims alleging fraud or misrepresentation by Defendants–Appellees in sug-

gesting that insurance could be taken out on his package, were barred by sovereign immunity and properly dismissed by the district court for lack of jurisdiction.

## II. Contract claim

■ In response to Gildor's claim that the Postal Service is bound by a contract of insurance made by its employees, the government argues that Gildor is bound by the Postal Service regulations, which provide that the Postal Service does not ensure jewelry shipped by international Express Mail. According to the government, terms in small print on the reverse side of the customer copy of the mailing label gave Gildor notice of the relevant regulations and expressly provided that "[i]indemnity is not paid for ... jewelry" shipped by international Express Mail.[2] Gildor argues in response that the conduct of the postal employees equitably estopped the Postal Service from relying on the regulations to deny payment.

The district court rejected equitable estoppel on two grounds. First, it concluded that "no reasonable trier of fact could conclude that Plaintiff reasonably relied on any representations by Defendants" because, had Gildor read the reverse side of the Express Mail Mailing Label, he would

have learned that the Postal Service does not insure jewelry in international Express Mail shipments and that Postal Service personnel are not permitted to make an exception to such a restriction. *Gildor*, 376 F.Supp.2d at 290. We think that a reasonable trier of fact could find that it was reasonable for Gildor to rely on the assurances of the postal employees. Gildor could reasonably have assumed that these employees were familiar with the policies of their employer, all the more so when a postal worker charged Gildor $49.00 for the insurance and indicated on the front of the Mailing Label, in writing, that the package was insured for $5,000.00. We note that there was nothing on the label directing a customer to the restrictions on the reverse side,[3] and that the language on the reverse side regarding restrictions on insurance coverage is very small and difficult to read. *See Arthur Philip Export Corp. v. Leathertone, Inc.*, 275 A.D. 102, 87 N.Y.S.2d 665, 667 (N.Y.App.Div.1949) ("A party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated."); *Tri–City Renta–Car & Leasing Corp. v. Vaillancourt*, 33

---

2. Gildor's customer copy of the Express Mail Mailing Label stated on the reverse side in fine print (approximately six-point font), in relevant part:

Insurance is provided only in accordance with postal regulations in the ... International Mail Manual (IMM). The ... IMM set[s] forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, conditions of payment, and adjudication procedures. Copies of the ... IMM are available for inspection at any post office and online at pe.usps.gov.... The ... IMM consist[s] of federal regulations, and USPS personnel are NOT authorized to change or waive these regulations or grant exceptions.... For international Express Mail shipments, international coverage may vary by country

and may not be available to some countries. Indemnity is not paid for items containing coins, banknotes, currency notes (paper money); securities of any kind payable to the bearer; traveler's checks; platinum, gold, and silver (manufactured or not); precious stones, jewelry, and other valuable or prohibited articles.

3. Gildor astutely notes that earlier versions of the Express Mail Mailing Label contained an express disclaimer on the front of the customer's copy stating in large, all capital, bold-faced type: "**SEE REVERSE SIDE FOR SERVICE GUARANTEE AND INSURANCE COVERAGE LIMITS**". The new version of the customer copy of the Express Mail Mailing Label that Gildor received contained no such disclaimer.

A.D.2d 613, 304 N.Y.S.2d 682, 684 (N.Y.App.Div.1969) (same). Moreover, the relevant language is contained on the reverse side of the customer copy of the label, which was given to Gildor only after the transaction was concluded—*i.e.,* after Gildor had paid for insurance and the Postal Service had accepted the package for insured delivery. We find no indication in the record that, *prior* to the transaction, Gildor had any notice that his jewelry might not be insurable or that he needed to consult the International Mail Manual. *Cf. Ward v. Cross Sound Ferry,* 273 F.3d 520, 522, 525–26 (2d Cir.2001) (fine print on reverse side of ferry ticket containing contractual time limitation unenforceable because ticket only in possession of passenger for two or three minutes and ferry company failed to reasonably communicate to passengers that the ticket contained important terms and conditions); *Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11, 17 (2d Cir.1968) (Friendly, *J.*) ("[T]he thread that runs implicitly through the cases sustaining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights.").

█ The district court also reasoned that "[e]ven assuming Plaintiff did reasonably rely on representations by Defendants, there is insufficient evidence in the record upon which a reasonable trier of fact could conclude that the government engaged in affirmative misconduct." *Gildor,* 376 F.Supp.2d at 291. The district court understandably relied on decisions of the Second Circuit holding that equitable estoppel cannot be used against the government unless there has been a showing of affirmative misconduct by the government. *See Rojas–Reyes v. INS,* 235 F.3d 115, 126 (2d Cir.2000); *City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir.1994). While we agree with the district court that there is insufficient evidence of affirmative misconduct, the Seventh Circuit held in *Azar v. United States,* 777 F.2d 1265 (7th Cir.1985), and *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982), that, because of the commercial and quasi-private nature of the United States Postal Service, a plaintiff could succeed on an equitable estoppel claim against the Postal Service without showing affirmative misconduct. We vacate the grant of summary judgment to the Postal Service on Gildor's contract claim, and remand to the district court so that it may consider whether, in light of *Azar* and *Portmann,* the affirmative misconduct requirement should apply to the Postal Service.

If the district court concludes that it should not apply, the court will have to consider whether the Postal Service is nevertheless entitled to judgment on any other basis. Among the questions to be considered is whether Gildor can prevail in light of the Supreme Court's holding in *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), that the Appropriations Clause of the United States Constitution, Art. I, § 9, cl. 7, precludes the use of collateral estoppel to obtain payment from the United States Treasury absent authorization of Congress. *See also Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Dun & Bradstreet Corp. Found. v. U.S. Postal Serv.,* 946 F.2d 189, 195–96 (2d Cir.1991). In the absence of briefing by the parties, it is unclear whether payment from the Postal Service constitutes payment from the United States Treasury covered by the Appropriations Clause and the Supreme Court's decisions in *Office of Personnel*

*Management* and *Merrill. See* 39 U.S.C. §§ 2001–2010; *Portmann,* 674 F.2d at 1163 ("Finally, because the operations of the Postal Service are financed almost entirely from a self-sustaining fund generated out of the business revenue received by the Service, the *Merrill* Court's reasoning that only Congress has the power to charge the public treasury, is similarly inapplicable to the instant situation."); *id.* at 1168. We think it prudent to leave this question to be addressed in the first instance in the district court, if necessary, after full briefing by the parties.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendant–Appellees on Gildor's tort claims, we VACATE the district court's grant of summary judgment on Gildor's contract claim, and we REMAND this case for further proceedings consistent with this summary order.

This Court will appoint *pro bono* counsel for appellant unless he notifies the Clerk of the Court in writing within five (5) days that he does not wish to have counsel appointed.