Ellen DEVLIN, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Docket No. 02–6128.

United States Court of Appeals,
Second Circuit.

Argued: July 15, 2003.

Decided: Dec. 12, 2003.

Thomas P. Cella (Keith R. Rudzik, Todd W. Whitford, on the brief), Howard, Kohn, Sprague & FitzGerald, Hartford, Conn., for Plaintiff–Appellant.

Robin D. Smith, Trial Attorney, Torts Branch, for Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C. (Christopher J. Christie, United States Attorney, Jeffrey Axelrad, Director, Torts Branch, Civil Division, on the brief), for Defendant–Appellee.

Before: VAN GRAAFEILAND, CALABRESI, and WESLEY, Circuit Judges.

CALABRESI, Circuit Judge.

Plaintiff Ellen Devlin appeals from a final judgment entered in the United States District Court for the District of Connecticut (Dorsey, *J.*) granting the government's motion to dismiss a negligence action brought pursuant to the Federal Torts Claims Act, 28 U.S.C. § 2671 *et seq.* We vacate the judgment and remand the case for further proceedings.

## BACKGROUND

Plaintiff's brother, Michael Murratti, began his employment as a letter carrier for the United States Postal Service (USPS) in New Haven, Connecticut, on June 23, 1984. As a federal employee, he was covered by the Federal Employees Life Insurance program established by the Federal Employees Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 *et seq.* He completed a form, known as a Standard Form 2823 "Designation of Beneficiary," to name his mother, Margaret M. Devlin, as the beneficiary of 60% of the life insurance proceeds, and his nephew, David M. Spinato, as the 40% beneficiary. On July 20, 1984, this form was properly filed in Murratti's Official Personnel File.

On November 8, 1986, Murratti, while acting within the scope of his duties, was involved in a car accident. This accident left him permanently disabled, and he received Federal Employee's Compensation thereafter.

On May 2, 1990, Murratti went to the Personnel Office of the USPS in New Haven and requested assistance from Blase Redding (now Blase Pierce) or Barbara Walcott, or both. Redding and Walcott were employed as personnel assistants; their duties included helping postal service employees and employees receiving Federal Employee's Compensation benefits complete Designation of Beneficiary forms. Murratti sought to change the beneficiaries of his life insurance policy. To do so, Muratti completed and signed a new form, which was witnessed by both personnel assistants. That form named Murratti's mother as the 60% beneficiary and Plaintiff, Murratti's sister, as the 40% beneficiary.

Because of Murratti's status as a "compensationer," that is, as a recipient of Federal Employee's Compensation benefits, *see* 5 U.S.C. § 8705(a),[1] his form, in order

---

1. 5 U.S.C. § 8705(a) provides in relevant part:

   The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviv- ing at the date of his death, in the following order of precedence:
   First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as

to be effective, had to be filed in the Office of Personnel Management—not in the personnel office in New Haven. Plaintiff alleges that Murratti advised Redding and/or Walcott that he was receiving Federal Employee's Compensation benefits. Plaintiff also alleges that, consistent with the personnel assistants' usual practice for compensationers and regular employees alike, Murratti was given a carbon copy of the form, and the original was retained by either Redding or Walcott for filing.

The personnel assistants, however, never forwarded the form to the Office of Personnel Management. Instead, the form was erroneously put in Murratti's Official Personnel File in the Personnel Office in New Haven.

Murratti's mother died on June 9, 1996, and Murratti died several months later on October 14, 1996. Upon his death, both Plaintiff and Murratti's nephew, Spinato, submitted claims for the life insurance proceeds to Metropolitan Life Insurance Company (MetLife), the underwriter for the Federal Employees Life Insurance program. MetLife denied Plaintiff's claim. On May 5, 1998, Plaintiff filed an administrative claim with the USPS, alleging that "[e]mployees of the United States Postal Service negligently failed to comply with the filing requirements [of SF–2823] and/or were negligently trained in the proper filing procedure." That claim was denied on April 15, 1999.

Plaintiff then brought timely suit against the United States pursuant to the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* Her complaint alleged, *inter alia,* that the USPS's employees were negligent in assuming the "duty and obligation to properly file the Designation of Beneficiary form with OPM after taking the completed form from Michael Murratti, which duty was breached by their failure to effectuate proper filing." Complaint ¶ 17(a).

The district court (Dorsey, *J.*) initially denied the government's motion for summary judgment. *See Devlin v. United States,* 140 F.Supp.2d 170 (D.Conn.2001), *vacated by Devlin v. United States,* 285 F.Supp.2d 120 (D.Conn.2002). It rejected the government's argument that the FTCA's misrepresentation exception, 28 U.S.C. § 2680(h), barred Plaintiff's claim. *Id.* at 173. Additionally, the court held that, if the facts revealed that the USPS employees did assume the task of completing the processing of Murratti's Designation of Beneficiary form, the government could be found liable under the negligence doctrine accepted in Connecticut that "where a person gratuitously undertakes a duty to perform a task, that person must exercise reasonable care in performing that task." *Id.* at 173 (hereinafter referred to as the "Good Samaritan" theory of liability).

provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect. . . .
5 U.S.C. § 8705(a).
The back of the Designation of Beneficiary Form also provides instructions as to where the form should be filed:
Where to File Completed Form. If the Insured is an employee, file the form with the employing agency. If the Insured is a

retired employee or is receiving Federal Employee's Compensation, file the form with the Office of Personnel Management . . . . If an application for retirement or compensation is pending, file the form with your employing agency if still employed, or with the Office of Personnel Management if no longer employed. Receipt of the designation form will be noted on the bottom of the form and the duplicate (Part 2) will be returned to you as evidence that the original has been received and filed.

The government moved for reconsideration, and the district court granted that motion, vacated its earlier decision, and granted summary judgment in favor of the government on the ground that Plaintiff's claim did not qualify as one for "injury or loss of property," under section 1346(b)(1) of the FTCA. 28 U.S.C. § 1346(b)(1). *Devlin v. United States*, 285 F.Supp.2d 120 (D.Conn.2002). Plaintiff appealed.

## DISCUSSION

We review a district court's ruling on a motion for summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences for, the nonmoving party. *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir.2002).

In addition to the ground on which it won below, the government advances the following alternative rationales for upholding the district court's grant of summary judgment: 1) the claim is barred by the FTCA's misrepresentation exception, *see* 28 U.S.C. § 2680(h); 2) the claim is barred by the FTCA's interference-with-contract-rights exception, *see id.*; 3) Congress intended FEGLIA's remedies to be exclusive of FTCA remedies in this type of case; 4) Plaintiff's claim is essentially one for estoppel, and estoppel does not lie

against the government in this context; 5) Plaintiff does not state a claim under Connecticut tort law; and 6) even if Connecticut law permitted Plaintiff's claim, that law would be preempted by FEGLIA.

We decline to address the government's argument based on the FTCA's interference-with-contract-rights exception, because we have not had the benefit of the district court's initial consideration of that issue.[2] We also will not address whether Plaintiff states a claim under Connecticut law, but note that the district court, upon reconsideration of the issue, should examine whether Connecticut has resolved whether a plaintiff may rely upon a "Good Samaritan" theory of liability where a) the plaintiff is a third-party with no special relationship to the defendant, b) the claim is one of negligent, rather than intentional, conduct, and c) there may be an absence of "physical harm." Based on our preliminary review of the state's case law, this important question may well remain an open one.[3] Accordingly, the district court might deem it advisable to take advantage of Connecticut's certification procedure, *see* CONN. GEN. STAT. § 51–199b, for guidance.

We do, of course, reach the issue addressed by the district court in its latest opinion—whether the FTCA's "injury or loss of property" clause bars Plaintiff's

**2.** If the district court reaches this issue on remand, it should consider *Sowell v. United States*, 835 F.2d 1133, 1135 (5th Cir.1988) (affirming district court's award of damages in the amount of lost life insurance benefits to widow, who claimed, under a "Good Samaritan" theory, that the Army negligently misplaced her deceased husband's allotment form that would have set up automatic premium payments, and holding that the FTCA's interference-with-contract-rights exception did not bar claim).

**3.** *Compare, e.g., Waters v. Autuori*, 236 Conn. 820, 676 A.2d 357 (1996) (rejecting cause of

action for negligence where plaintiff investor sought damages for failed investments made in reliance upon financial reports prepared by accountants, with whom plaintiff was not in privity; noting that plaintiff's "commercial loss" did not satisfy RESTATEMENT (SECOND) OF TORTS § 324A's "physical harm" requirement) *with Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599 (1977) (recognizing cause of action where plaintiff home buyer sought recovery, from a contractor with whom plaintiff was not in privity, for a negligently built septic tank).

claim. We disagree with the district court's determination that it does and therefore vacate and remand for further proceedings. We also consider the government's argument that the Plaintiff's claim is barred by the FTCA's misrepresentation exception, and agree with the district court's conclusion in its first opinion that this exception does not apply to Plaintiff's "Good Samaritan" theory of liability. Finally, we consider and reject the government's arguments regarding FEGLIA preemption and estoppel.

## I. The FTCA's "Injury or Loss of Property" Requirement

Enacted in 1946, the FTCA waives the federal government's sovereign immunity against certain tort claims arising out of the conduct of its employees. Section 1346(b)(1) provides:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). *See Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (a claim must allege the six elements contained above to be actionable under § 1346(b)). Section 2674 provides in relevant part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. Finally, Section 2680 lists various exceptions to the FTCA's waiver of immunity, such as an exception for claims arising out of certain intentional torts. 28 U.S.C. § 2680.

The district court held that it did not have jurisdiction to hear the Plaintiff's claim because the claim did not satisfy section 1346(b)(1)'s "injury or loss of property" requirement. *Devlin,* 285 F.Supp.2d 120. The court began by observing that the meaning of "property" is a matter of federal statutory construction. *Id.* at 123. It pointed out that the term was not defined by the FTCA and that it therefore had to be construed in accordance with its ordinary and natural meaning. *Id* at 123. The court then cited a Black's Law Dictionary definition of property: "[t]hat which is peculiar or proper to any one person; that which belongs exclusively to one" or "ownership; the unrestricted and exclusive right to a thing; the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it." *Id.* (citing BLACK'S LAW DICTIONARY 1216 (6th ed. 1990)). Noting that the Plaintiff does not contend that she has a legal claim as a beneficiary of the insurance policy, the court characterized what she claims to have lost as a result of the government's negligence as an "expected property interest." *Id.* at 123–24. It then cited a Connecticut marital dissolution case for the proposition that " '[a]n expectancy is only the bare hope of succession to the property of another, such as may be entertained by an heir apparent .... Such a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist.' " *Id.* (quoting *Kraf-*

*ick v. Krafick*, 234 Conn. 783, 797, 663 A.2d 365 (1995)). The court concluded from this that Plaintiff's "inchoate interest" does not satisfy the definition of property under the FTCA, and cited a District of Maryland decision as support: "[I]n order to be covered by the FTCA there must have been a physical impact of some type on the plaintiff or its property . . . ." *Id.* (citing *Charles Burton Builders, Inc. v. United States*, 768 F.Supp. 160, 162 (D.Md. 1991)). The court also stated that the FTCA's waiver of sovereign immunity must be strictly construed in favor of the sovereign and that it is the plaintiff's burden to show that her claim falls within that waiver. *Id.*

The phrase "injury or loss of property" is not defined by the FTCA, *see* 28 U.S.C. § 2671 (defining other terms), and has not been interpreted by the Supreme Court[4] or by any previous decision of this court. The meaning of the phrase is obviously a matter of federal statutory interpretation, *see Molzof v. United States*, 502 U.S. 301, 305, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) (what the term "punitive damages" as used in section 2674 of the FTCA signifies "is by definition a federal question"). But recognizing this only sets up the first issue to be resolved—whether Congress intended the phrase to have a uniform "federal" meaning or, alternatively, meant the phrase to refer to the applicable state law for its content. *See De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) ("The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than

federal law.") The district court's opinion did not squarely analyze this issue, nor do the briefs submitted by the parties.

This court's decision in *Birnbaum v. United States*, 588 F.2d 319 (2d Cir.1978), strongly suggests that the phrase incorporates state law. That case dealt with the phrase "personal injury" in the larger clause "for injury or loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). In *Birnbaum*, we upheld the government's liability for the tort of intrusion arising from the CIA's reading of certain mail sent to and from the Soviet Union.[5] The court began by stating that there was subject matter jurisdiction under the FTCA only "(1) if there was a *'personal injury' as defined by state law*, and (2) if the acts causing the 'personal injury' would give rise to liability under state law if executed by an employee of a private person." *Id.* at 322 (emphasis added). On the first issue, the court held:

> Although upon the consolidated trial it appeared that no plaintiff was touched physically or harmed financially, and that the sole damage claim was mental suffering, New York recognizes as "personal injury" mental suffering that results from a known category of tort.

*Id.* (citing New York cases).

It would, of course, be anomalous if "personal injury" was defined by state law but the neighboring phrase "injury or loss of property" were not. And, although *Birnbaum* did not pause to consider them, there appear to be good reasons for taking this state-incorporation approach. An important factor in deciding whether to give

---

**4.** The meaning of the phrase was expressly reserved in a footnote of *Kosak v. United States*, 465 U.S. 848, 852 n. 7, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984).

**5.** We note that one of this case's important conclusions—that New York law would recog-

nize the privacy tort of intrusion—proved to be an inaccurate prediction of that state's law and was, in fact, rejected by later cases. *See Hurwitz v. United States*, 884 F.2d 684, 687 (2d Cir.1989).

a statutory provision a single federal meaning or one that varies by state is whether nationwide uniformity is important to the proper functioning of the statutory scheme in question. For example, in *Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 209, 66 S.Ct. 992, 90 L.Ed. 1172 (1946), the Supreme Court held that a federal statute that subjected the real property of certain agencies to "State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed," left the definition of "real property" to local tax laws, so long as those laws did not discriminate against the federal government. In disagreeing with the government's position that a uniform federal definition should apply, the Court stated:

> [T]he government relies on the generally accepted principle that Congress normally intends that its laws shall operate uniformly throughout the nation so that the federal program will remain unimpaired. But Congress in permitting local taxation of the real property, made it impossible to apply the law with uniform tax consequences in each state and locality. For the several states, and even the localities within them, have diverse methods of assessment, collection, and refunding. Tax rates vary widely. To all of these variable tax consequences Congress has expressly subjected the "real property" of the Defense Plant Corporation. In view of this express provision the normal assumption that Congress intends its law to have the same consequences throughout the nation cannot be made.

*Id.* at 209, 66 S.Ct. 992.

Similarly, the FTCA's basic thrust was decidedly not to create a federal common law of torts, but rather—as expressed in the final clause of section 1346(b)(1) and in section 2674—to tie the government's liability—albeit subject to a host of qualifications—to the disparate and always evolving tort law of the several states. *See Birnbaum*, 588 F.2d at 327–28 ("[B]y adopting the 'law of the place' as the source for rules of decision under the Federal Tort Claims Act, Congress expressly negated any possible inference that federal courts were to exercise any 'common lawmaking' power to fashion torts under the Act in the interest of national uniformity."). *Cf. Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (in holding that the choice-of-law rules of the state in which the negligence occurred are controlling, the Court stated: "We should not assume that Congress intended to set the courts completely adrift from state law with regard to questions for which it has not provided a specific and definite answer in an act such as the one before us which, as we have indicated, is *so intimately related to state law*.") (emphasis added). It would be antithetical to the FTCA's structure if each term in section 1346(b)(1), such as "cause" and "negligent," were given a uniform federal meaning, thereby requiring plaintiffs to satisfy a layer of federal tort law requirements in addition to satisfying those of the law of the relevant state.

The Supreme Court has itself endorsed the state-law incorporation approach with regard to a closely related clause in *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam).[6] That case held that the phrase "while acting within the scope of his office

---

6. That the opinion is terse does not render it any less controlling. It states in full: "This case is controlled by the California doctrine of respondeat superior. The judgment is vacated and the case is remanded for consideration in the light of that governing principle." 350 U.S. 857, 76 S.Ct. 100.

or employment" in section 1346(b) is to be given meaning by the law of the relevant state. *See also O'Toole v. United States*, 284 F.2d 792, 795 (2d Cir.1960) ("[*Williams*] disposed of the contention that the phrase 'acting within the scope of his office or employment' was to be interpreted as a matter of federal law.").

Other Supreme Court cases, however, suggest that the phrase "injury or loss of property" might instead be assigned a uniform federal meaning.[7] In *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), for example, the Supreme Court interpreted the phrase "negligent or wrongful act or omission" to bar the plaintiff's claim, which sought recovery under a strict liability theory for damage resulting from the sonic booms produced by military planes. The Court stated:

> The necessary consequence of the Court's holding in *Dalehite* is that the statutory language "negligent or wrongful act or omission of any employee of the Government," is a uniform federal limitation on the types of acts committed by its employees for which the United States has consented to be sued. Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of misfeasance of nonfeasance, on the part of the Government.

*Id.* at 799, 92 S.Ct. 1899 (internal quotation marks omitted).[8] The phrase at issue in *Laird* appears immediately after the phrase that is of interest to us here, and this may suggest that the latter should also be assigned a uniform meaning. *Laird*, however, took the uniformity approach only so far. It by no means assigned an independent federal content to "negligent" whereby plaintiffs would first have to prove negligence under federal common law standards and then, having cleared that hurdle, prove negligence under "the law of the place where the act or omission occurred." Rather, *Laird* established that Congress a) had in mind a (federal-law) taxonomy in which strict liability, negligence, and intentional torts were distinguished from each other; b) excluded the first category from the FTCA's scope; and c) left the content of the latter categories to the law of the

---

7.  The few decisions from other circuits that have interpreted the phrase "injury or loss of property" have seemingly given it a uniform federal meaning. *See Idaho ex rel. Trombley v. U.S. Dept. of Army, Corps of Engineers*, 666 F.2d 444, 446 (9th Cir.1982) (noting that "[w]hether a particular cause of action constitutes a claim that is excluded from the FTCA is a question of federal law," and that "[t]he inquiry is jurisdictional, and, therefore, questions as to what acts constitute negligence under state law are irrelevant"); *Charles Burton Builders*, 768 F.Supp. at 163 ("Plaintiff attempts to rely on Maryland law to show that the kind of economic harm suffered by the plaintiff is 'property damage' or 'loss of property' within the meaning of the statute. However, whatever may be the result of a semantic exercise with the law of Maryland, it is federal and not state law which governs the interpretation of the FTCA. Hence, even if Maryland law would, for some or all purposes, consider Plaintiff's claim to be for 'injury or loss of property,' it is absolutely clear that federal law would not."). These cases, however, are made less persuasive by the fact that they appear to conflate the question of whether the meaning of the phrase is a federal question with the separate issue of whether Congress nevertheless meant the phrase to draw on state law for its content.

8.  Compare Justice Stewart's dissenting position: "As I read the Act and the legislative history, the phrase 'negligent or wrongful act or omission' was intended to include the entire range of conduct classified as tortious under state law. The only intended exceptions to this sweeping waiver of governmental immunity were those expressly set forth and now collected in § 2680." 406 U.S. at 805–06, 92 S.Ct. 1899 (Stewart, *J.*, dissenting).

534

relevant state. *Laird,* therefore, stakes out a "hybrid" approach on the continuum between a purely federal definition of a term and a purely state-law-derived one.[9]

By contrast, *Molzof v. United States* took a purer federal-uniformity approach in its interpretation of the FTCA's bar on the recovery of "punitive damages," *see* 28 U.S.C. § 2674. In *Molzof,* there was no suggestion that that term was meant to incorporate the understanding of punitive damages held by each state. Rather, the Court treated "punitive damages" as a term of art with a widely accepted common-law meaning. 502 U.S. 301, 306–08, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) (referring to judicial decisions and to legal dictionaries in existence during the drafting of the FTCA that defined punitive damages as damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression). But, of course, *Molzof* dealt with a separate section of the FTCA from the one before us, and it interpreted a clause expressly designed to exclude federal liability. As such, its application of a uniform federal definition is both understandable and not especially applicable to the instant case.

■ Although we are inclined to agree with the state–incorporation approach over the uniformity approach—and indeed may well be bound by *Birnbaum v. United States* to adopt the former—we need not conclusively determine the issue, because we conclude that, under either approach, Plaintiff's claim is one for "injury or loss of property." We will apply each approach in

turn. In order to do so, however, we must first decide how to characterize the loss that the Plaintiff claims to have suffered.

The government argues that the fact that Plaintiff would have become a beneficiary of her brother's life insurance policy had the Designation of Beneficiary been filed properly is "beside the point. . . . [S]he was not properly designated and she did not become a beneficiary. Even though she may have expected to become a beneficiary upon her brother's death, her disappointment was not an 'injury or loss of property, or personal injury or death.'" We disagree. The proper characterization of Plaintiff's loss is of her status as beneficiary, that is, of what she would have been in the period before Murratti's death had she been designated in a proper fashion. Had that happened, Murratti would still have retained the right to change beneficiaries at any time by filing another Designation of Beneficiary form. It is this status, as a beneficiary that could be removed, that Plaintiff would have had but for the government's alleged negligence. The question then becomes whether the loss of such a status or interest qualifies as an "injury or loss of property" under the FTCA.

### A. The Uniform Definition Approach

■ When giving a term a uniform definition for purposes of a statute like the FTCA, the term can either be given its "ordinary or natural" meaning or be treated as a term of art that has a conventional meaning.[10] *Compare Meyer,* 510 U.S. at

9. Another example of a hybrid approach, though one that leans more to the state-law side of the continuum, is *De Sylva v. Ballentine.* That case held that the meaning of "children" in the Copyright Act was to be determined by reference to state law, but then added a (federal-law) constraint on that meaning by providing that "a State would

[not] be entitled to use the word 'children' in a way entirely strange to those familiar with its ordinary usage," and, consequently, that state law would control only within a permissible range of meanings of that word. 351 U.S. at 581, 76 S.Ct. 974.

10. We find the opposing canons of construction urged by the parties to be of little assis-

476, 114 S.Ct. 996 (construing the FTCA's use of term "cognizable" in "accordance with its ordinary or natural meaning" and citing a Black's Law Dictionary definition); *Smith v. United States*, 507 U.S. 197, 201–02, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993) (construing the FTCA's exception for claims arising in a "foreign country" in terms of its "commonsense meaning," and thus as referring to a "region or tract of land" and not a "sovereign state"); *and Kosak v. United States*, 465 U.S. 848, 852, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (stating, in reference to the FTCA's exception for claims arising from customs officials' detention of goods, that "[t]he starting point of our analysis of these competing interpretations must, of course, be the language of § 2680(c). We assume that the legislative purpose is expressed by the ordinary meaning of the words used.") (quotation marks and citation omitted); *with Molzof*, 502 U.S. at 306–07, 112 S.Ct. 711 (stating, in reference to the FTCA's bar on the recovery of punitive damages, that " '[p]unitive damages' is a legal term of art that has a widely accepted common-law meaning," and noting the "cardinal rule of statutory construction" that holds that "[w]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries and practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.... In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.") (internal quotation marks omitted); *id.* at 307–308, 112 S.Ct. 711 ("This rule carries particular force in interpreting the FTCA. Certainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending some twenty-eight years of congressional drafting and redrafting, amendment and counter-amendment.") (internal quotation marks omitted).

The district court seemingly took neither approach. After defining property in a dictionary fashion as, *inter alia*, "the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it," it relied on a District of Maryland decision that "[i]n order to be covered by the FTCA there must have been a *physical impact* of some type on the plaintiff or its property," *Charles Burton Builders, Inc.*,

---

tance in our task of interpreting the FTCA. And in this we are not alone. The Supreme Court in *Smith v. United States* noted the variety of judicial pronouncements on how the FTCA should be construed: some decisions emphasized the rule that waivers of sovereign immunity should be strictly construed in favor of the sovereign, while others underlined the need to construe the FTCA liberally to achieve its remedial purposes. 507 U.S. 197, 203, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993). As if recognizing that these approaches "cancel out," the Court adhered to the following: "We should also have in mind that the Act waives the immunity of the United States and that ... we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *Id.* Similarly, *Kosak* found the canon of strict construction "unhelpful" in interpreting the Act's exception relating to the detention of goods by custom officials. 465 U.S. at 853 n. 9, 104 S.Ct. 1519 ("Though the Court of Appeals is certainly correct that the exceptions to the Tort Claims Act should not be read in a way that would 'nullif[y them] through judicial interpretation,' unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute. We think that the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception'-no less and no more.") (citations omitted).

768 F.Supp. at 162 (emphasis added). In doing this, the district court was positing a definition of property that emphasized tangibility or "thing-ness."[11] But this definition is not only contrary to property's ordinary "dictionary" meaning,[12] it is also clearly untenable in the context of the FTCA. Section 1346(b)(1) manifestly encompasses some torts that are not accompanied by a "physical impact." There is no doubt, for example, that legal malpractice is cognized by the FTCA because Congress has prescribed special rules for FTCA claims relating to the malpractice of Department of Defense and Coast Guard lawyers, including an exemption of such claims from the FTCA's misrepresentation exception and a provision making the FTCA the exclusive remedy for such negligence. *See* 10 U.S.C. § 1054(a) & (e).

That section 1346(b)(1) encompasses a wide sweep of intangible tort claims is also evidenced by Congress' decision to limit that liability by setting out specific exceptions in section 2680. These exceptions exclude some but not all "non-physical"

harms. *See* 28 U.S.C. § 2680(h) (barring claims arising out of, *inter alia,* libel, slander, misrepresentation, deceit, and interference with contract rights). If the kind of "non-physical" harm at stake in interference-with-contract-rights actions did not qualify as "injury or loss of property" in section 1346(b)(1), there would have been little reason to exclude such actions in section 2680.[13] *See Kosak,* 465 U.S. at 852 n. 7, 104 S.Ct. 1519 (a construction of one provision of the FTCA that renders another provision "mere surplusage" is subject to considerable doubt).

Congress was indeed interested in limiting the scope of the government's waiver of immunity from suits for negligence and intentional torts, but we have found no indication either in the language or legislative history of the Act that Congress meant to accomplish this through the phrase "injury or loss of property," and every indication that Congress did so through the specific and detailed exceptions it established in section 1280.[14] It is

---

**11.** For support, *Charles Burton* cited a series of Ninth Circuit decisions that rejected suits brought by states to recover their expenditures in extinguishing forest fires that were caused by the alleged negligence of federal employees, but did not damage state-owned land. *See, e.g., Idaho ex rel. Trombley,* 666 F.2d 444. The Ninth Circuit held in *Trombley* that these firefighting expenses "simply do not constitute 'money damages' for 'injury or loss of property' under the FTCA." *Id.* at 446. Because the Ninth Circuit did not explain its reading of that phrase by reference to the text, history, or structure of the FTCA, we see no reason to discuss these cases further.

**12.** *See, e.g.,* BLACK'S LAW DICTIONARY (3d ed. 1933) ("[Property] is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible . . . .")

**13.** *See also Block v. Neal,* 460 U.S. 289, 296 & n. 5, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) (stating that section 2680(h)'s misrepresenta-

tion exception "relieves the Government of tort liability for *pecuniary injuries* which are wholly attributable to reliance on the Government's negligent misstatements," and noting that the exception applies only when the "action itself falls within the commonly understood definition of a misrepresentation claim, which has been identified with the common law action of deceit, and has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings") (emphasis added) (internal quotation marks omitted).

**14.** "The three objectives most often mentioned in the legislative history as rationales for the enumerated exceptions are: ensuring that 'certain government activities' not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available." *Kosak,* 465 U.S. at 858, 104 S.Ct. 1519.

little surprise, then, that both the Supreme Court and the federal appeal courts have regularly looked to those exceptions to effectuate Congress' desire to limit governmental tort liability, rather than doing so by reading limitations into the concept of "property." *See, e.g., United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (claim barred by discretionary-function exception where a shareholder sued to recover, *inter alia,* the loss in value of his shares allegedly caused by the government's negligent supervision of directors of a savings and loan association); *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (claim barred by misrepresentation exception where a purchaser relied on a faulty Federal Housing Administration appraisal and consequently paid too much for a house); *see also Jones v. United States,* 207 F.2d 563 (2d Cir.1953) (claim barred by misrepresentation exception where plaintiffs sold stock for too low a price in reliance upon the U.S. Geographical Survey's inaccurate estimates concerning the oil productivity of certain land); *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151 (D.C.Cir.1985) (claim barred by interference-with-contract-rights exception, where a contractor charged General Services Administration with tortious interference with prospective economic advantage for having constructively excluded plaintiff in violation of federal procurement regula-

tions). Significantly, in none of these cases did the courts suggest that the plaintiff's claim was not for "injury or loss of property."

But finding that "injury or loss of property" encompasses harm that is not physical does not suffice to support Plaintiff's claim. We must also determine whether her interest in being a beneficiary is sufficiently substantial to qualify as property for purposes of this torts action. Admittedly, the technical meaning of "property" is more difficult to pin down than that of "punitive damages," which was at issue in *Molzof.* This is so because "property" is a term with a famously diffuse set of meanings across a range of areas of law. And, at least since the end of the nineteenth century, the conceptualistic approach to understanding its meaning has given way to a functionalist approach that designates something as "property" according to the context and purpose of the designation.[15] Consequently, examining the use of the word "property" in the law of, say, taxation may be of little help if we are interested in the meaning of that term in a statute dealing with torts. *Cf. Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (observing, in interpreting the Bankruptcy Act, that "[i]t is impossible to give any categorical definition to the word 'property,' nor can we attach to it in certain relations the limitations which would

---

**15.** "[W]hat is property may depend upon the action that is dependent upon the answer. Anything recognized as property has, indeed, existence as such in the eye of the law, but for different purposes existence is rather freely conceded or denied.... Because Lord Eldon once unfortunately declared that equity protects only property (whereas present-day courts of equity in fact freely protect political rights, sentimental interests in dead bodies and letters, rights of privacy and of reputation, and family relationships) courts have often *called* such interests property merely in order to make their protection seem conven-

tional." Francis S. Philbrick, *Changing Conceptions of Property in Law,* 86 U. PENN. L. REV. 691, 694 (1938); *see also* RESTATEMENT (FIRST) OF THE LAW OF PROPERTY (1936) Ch. 1, at 3–4 (introductory note) (defining property not as a "thing," but as "the legal relations between persons with respect to a thing," which can be subdivided according to the concepts of right, privilege, power, and immunity); Thomas C. Grey, *The Disintegration of Property, in* PROPERTY NOMOS XXII 69, 69–73 (J. Roland Pennock & John W. Chapman, eds. 1980) (describing the modern lawyer's understanding of property as a "bundle of rights").

be attached to it in others. Whether an item is classed as 'property' by the Fifth Amendment's Just–Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern.") (internal quotation marks omitted).

■ In tort law, "injury to property" and "loss of property" have neither conventional nor ordinary, dictionary-type meanings. They are, instead, defined in terms of the kinds of harms to property for which a plaintiff may seek redress. As a result, in order to determine whether there exists an "injury or loss of property," we must examine whether Plaintiff's claim seeks to vindicate an interest that is given protection by the general common law of torts. In other words, we must determine whether Plaintiff's interest is treated as property for torts purposes. For the reasons given below, we conclude that Plaintiff's claim satisfies this requirement.

The parties focus their energies on whether the interest of a beneficiary of a life insurance policy—or the analogous interest of a potential heir to a will—is a "mere expectancy" or something more substantial. And, predictably, they take different sides on the matter. In fact, according to a leading insurance treatise, states take one of two views. A majority of jurisdictions hold that, where a right to change the beneficiary is reserved in a life insurance policy, the beneficiary has only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death. 4 COUCH ON INSURANCE § 58:14 (3d ed. 2003) (collecting cases); *see also* RESTATEMENT (THIRD) OF PROPERTY (Wills & Don. Trans.) § 2.1 (comment d) (1999) ("Before the decedent's death, a potential heir has no property interest but merely an 'expectancy' (an inchoate interest) in the decedent's intestate estate."). A minority of jurisdictions, by contrast, holds that a beneficiary of a life insurance contract "acquires not merely an expectancy in the anticipated benefits, but a qualified vested interest subject to be divested if a change in the beneficiary is made." COUCH § 58:15 (also using the terminology "qualified property right").

Couch's treatise, however, notes that there is "little, if any, practical difference" between the "mere expectancy" and "qualified property right" positions:

[T]o the extent that the concept of a qualified property right, or of a vested right subject to divestment, has been adopted to give the beneficiary standing to object to a change of beneficiary, the same result could be reached by simply interpreting "expectancy" in the property law sense, which enables an heir to challenge the validity of a disinheriting or excluding will even when the heir's right to the property in question is merely an expectancy.

Although the power to change beneficiaries is reserved, the beneficiary's interest is sufficiently substantial that it may be recognized in law or equity. *Id.*[16]

In other words, the label given to a beneficiary's interest seems not to be de-

---

**16.** Similarly, the Supreme Court of New Hampshire noted the diversity of property-law labels used to describe the interest of a beneficiary where the insured reserves the right to change beneficiaries, and found such labels to be of limited use:

The distinction between contingent and vested but defeasible is sometimes of impor-

tance when title to real estate is involved. But when the only title is a right under a contract to receive a sum of money which is to become due upon the happening of a future event, the need to observe the niceties of real estate nomenclature disappears. Under either the Massachusetts or the New Hampshire rule the designated beneficiaries

terminative of what recourse the law gives to a beneficiary to protect her status against the actions of third parties. Indeed, the treatise goes on to note that, under the majority rule, where a "change of beneficiary has been accomplished by fraud or undue influence practiced by the substituted beneficiary, the rights of the original beneficiary are not cut off by the attempted substitution. Equity may entertain jurisdiction ... to set aside a change to a substituted beneficiary .... The original beneficiary may also sue the second beneficiary for damages ...." *Id.* § 60:72. *Cf. id.* (a *minority* view holds "that where the insured had the right to change beneficiaries, the original beneficiary has no vested right which gives him or her any standing to protest that the insured was fraudulently induced to exercise his or her right").

Were this all we had to go on, we would be hard put to say which view should be deemed that taken by the FTCA. If, however, we look to the most relevant area of law, torts, the matter becomes much easier. For, in tort law, we find that the interest of a beneficiary or heir is regularly afforded substantial protection.[17] For example, the RESTATEMENT (SECOND) OF TORTS delineates a cause of action for the "intentional interference with inheritance or gift" as follows:

> One who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

RESTATEMENT (SECOND) OF TORTS § 774B (1979); *see also id.* (comment b) ("gift" includes the designation of another as a beneficiary under an insurance policy). Significantly, for the issue before us, whether the beneficiary's interest is treated as a "mere expectancy" or as something more is not a threshold consideration going to whether a tort action lies. Rather, the contingent nature of the interest goes instead to the existence of factual causation. Accordingly, the beneficiary must provide "proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no such interference." *Id.* (comment d).

---

took a present legal interest in the money upon the death of the party insured. So long as the power of defeasance is not exercised, they stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies.
*Barbin v. Moore*, 85 N.H. 362, 159 A. 409, 413 (1932); *see also id.* at 418 ("[I]n view of the underlying purpose for which life insurance is generally effected, it appears that the sounder view is that designated beneficiaries have substantial rights.").

17. Tort law has for at least a century afforded protection to interests that may be characterized as "expectancies." *See, e.g.,* Leo H. Whinery, Comment, *Tort Liability for Interference with Testamentary Expectancies in Dece-* *dent's Estates*, 19 U. KAN CITY L. REV. 78, 78–79 (1950) ("Although expectancies may now be protected through tort remedies, the growth of relief in the form of damages has been a comparatively slow process, when one looks at the evolution of the common law in the light of the last ten centuries. It was not until 1853, in the case of *Lumley v. Gye*, that an action in damages would lie against one who wantonly or selfishly induced a person under contract with the plaintiff to break the contract. [Now] tort liability for interference with expectancies [exists], not only in respect of contracts, but in cases of interference with one's right to seek employment, of interference with one's right to carry on a lawful business and of interference with expectancies under life insurance policies.").

Most states that have decided the issue in the inheritance context are in accord with the Restatement's approach. *See* Diane J. Klein, *The Disappointed Heir's Revenge, Southern Style: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Fifth and Eleventh Circuits,* 55 BAYLOR L. REV. 79, 84 n. 15 (2003) (reporting that approximately 24 states have recognized "tortious interference with expectation of inheritance," less than 10 states have rejected it, and the rest have not decided); *see also* Sonja A. Soehnel, Annotation, *Liability in Damages for Interference with Expected Inheritance or Gift,* 22 A.L.R.4th 1229, at § 2, 1983 WL 191057 (1983) ("In those cases in which the courts have expressed a general view as to the propriety of a cause of action for damages for interference with a gift, which include a number of cases involving interference with an inheritance, the courts have generally stated that such a cause of action would lie.")[18]

The early, and hence leading, case of *Mitchell v. Langley,* 143 Ga. 827, 85 S.E. 1050 (1915), in which the plaintiff sued her sister for writing letters to their ill half-brother that wrongfully induced him to cancel a benefit society certificate that had named all three sisters as equal beneficiaries, and for leading him to obtain a new certificate making the defendant the sole beneficiary, stated it thus:

> The fact that this status has not ripened into a vested and irrevocable ownership of the beneficial interest, and that the member has a right to change it, does not authorize a third party to maliciously and fraudulently destroy the status and thus prevent the interest or expectancy of the beneficiary from ripening so that he will receive the fund. The reserved right of the member is one thing; the malicious and fraudulent interposition of a third party to destroy the status is another.

85 S.E. at 1052.

Further support for our conclusion that one's interest as a beneficiary or heir is sufficient to support liability in tort can be found in the cases dealing with a lawyer's liability to an intended heir for the negligent preparation of a will or other estate-planning device. The privity requirement that once blocked third-parties from bringing professional negligence claims has eroded steadily since *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) (Cardozo, *J.*), so that, today, an "overwhelming majority of jurisdictions" recognizes an intended beneficiary's cause of action for the negligent drawing of a will. *See Barcelo v. Elliott,* 923 S.W.2d 575, 579 (Tex.1996) (Cornyn, *J.,* dissenting) (collecting cases and reporting that only four states in addition to Texas do not allow the intended beneficiary to sue). In these cases, the contingent nature of the plaintiff's loss—*i.e.* the fact that, had the plaintiff been properly named in the will, the testator, before her death, could have revoked the plaintiff's status as an heir and designated another—is given no special attention.

In view of the widespread recognition of liability for tortious interference with an inheritance and of a lawyer's liability to an intended heir—not only now, but at the time Congress used the phrase "injury or loss of property" in the FTCA—we conclude that the loss that Plaintiff complains of would fall within the meaning of that phrase.[19] It would, that is, if the phrase is

**18.** For other, earlier commentaries on this tort, see Alvin E. Evans, *Torts to Expectancies in Decedent's Estates,* 93 U. PA. L. REV 187 (1944); Whinery, *Tort Liability for Interfer-* *ence with Testamentary Expectancies in Decedent's Estate, supra.*

**19.** After this opinion was drafted, the D.C. Circuit decided *Tri–State Hospital Supply*

to be given a uniform, federal definition. What, however, if the phrase depends for its meaning on the law of the relevant state?

### B. The State–Incorporation Approach

We believe that the same result is reached if "injury or loss of property" is defined federally (i.e. for purposes of the FTCA), in reference to the law of Connecticut, the relevant state in this case, rather than in reference to the general common law.

When a federal statute looks to state law to give meaning to one of its provisions, it does not do so indiscriminately. Thus, in our case, given the many uses of the term "property" across the range of statutory and common-law fields, it would not do to throw a dart at the Connecticut case reports and use whatever definition of property is thereby encountered. Rather, we must do what the Supreme Court did in *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), and focus on that aspect of state law that is most relevant to the purposes of the federal statute at issue. In *De Sylva*, after deciding to refer to California law to determine whether illegitimate children are "children" under the Copyright Act and therefore empowered to renew their deceased parents' copyrights, the Court examined California's inheritance statute, since

"[t]his is really a question of the descent of property." *Id.* at 582, 76 S.Ct. 974. The Court found it sufficient that the child was eligible for inheritance under this statute, regardless of the fact that the child was not legitimate for other purposes under California law. *Id.* By doing this, the High Court made clear that to decide the state meaning of a federally used phrase, federal courts should be guided by those state cases that deal with the circumstances akin to those at play in the federal statute.

The parties' submissions, in the instant case, do not comport with the above principle. Thus, the government offers ample Connecticut case law to support the proposition that, under Conn. Gen. Stat. § 46b–81, which deals with equitable distribution upon the dissolution of a marriage, a person's interest as a potential heir is not subject to distribution because it is a mere expectancy. *See, e.g., Krause v. Krause*, 174 Conn. 361, 387 A.2d 548 (1978) (interpreting a predecessor of § 46b–81 and stating: "Expectancy is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist.") (internal quotation marks omitted); *Rubin v. Rubin*, 204 Conn. 224, 527 A.2d 1184 (1987) (holding that an expected inheritance is not subject to distribution under § 46b–81).

---

*Corp. v. United States,* 341 F.3d 571 (D.C.Cir. 2003), which held that a plaintiff's claim for damages in the amount of the legal fees it incurred in defending itself against a malicious prosecution qualified as a claim for "money damages ... for injury or loss of property" under the FTCA. *Id.* at 576 (Henderson, J.) (opinion for the court). The court's analysis agrees with our own in declining to follow the Ninth Circuit in requiring that a claim involve "physical injury" for it to be one for "injury or loss of property,"

*id.* at 580 ("No such requirement appears on the face of section 1346(b)(1) and we decline to engraft one."). *But see id.* at 584 (Rogers, J., concurring) (declining to reach the issue). The court does apparently reach and decide a question that we leave open, and holds that the federal uniformity approach to defining "injury or loss of property" is the correct one. *See id.* at 582 (Rogers, J., concurring). Apart from this variance, however, *Tri–State* is consistent with the approach we have taken in this case.

542

For her part, Plaintiff conversely (and correctly) points out that, in the life insurance context, Connecticut adheres to the view that the interest of the beneficiary of a life insurance policy is "more than a mere expectancy." *See* COUCH § 58:15 (placing Connecticut in the "qualified property right" or "vested right subject to divestment" category); *see also Allen v. Home Nat'l Bank*, 120 Conn. 306, 180 A. 498, 500–01 (1935) (holding that a widow's interest before her insured husband's death was "more than a mere expectancy" under Connecticut law: "Where, as here, the right to change [beneficiaries] is reserved to the assured, the interest of the beneficiary is yet deemed to be vested, although qualified in that it is subject to be defeated by an exercise of the right reserved.... So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies.") (internal quotation marks omitted; second alteration in original); *Klebanoff v. Mutual Life Ins. Co. of New York*, 362 F.2d 975, 978 (2d Cir.1966) (noting that, under Connecticut law, a beneficiary stands in the position of one "having a title which the law will recognize" so long as the power of defeasance is not exercised).

The parties thus confront us with cases standing for seemingly conflicting propositions. In some contexts, an interest analogous to the one before us is termed a "mere expectancy," while, in others, the interest is described as "more than a mere expectancy" and is the sort that commentators call a "qualified property right," *see* COUCH § 58:15. This situation, however, only underscores the fact that the appropriate place to find the meaning of "injury or loss of property" lies in Connecticut tort law and not either in the law of marital dissolution or in that of insurance.[20] That is, the approach we took in the last section, when we were seeking a uniform federal meaning for the phrase, is also the one we must follow with regard to the law of the relevant state.

The question thus becomes whether a person's interest as a named beneficiary or potential heir is a property interest that is protected *by the tort law of Connecticut*.[21] We conclude that it is because Connecticut follows the majority of jurisdictions both in recognizing the tort of interference with an inheritance, *see Benedict v. Smith*, 34 Conn.Supp. 63, 376 A.2d 774 (Conn.Super.Ct.1977),[22] and in recognizing an intended heir's cause of action against a lawyer for the negligent drawing of a will, *see Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81, 84 (1981); *Krawczyk v. Stingle*,

**20.** If we did not have tort law to look at, however, we would be inclined to decide that the insurance beneficiary cases, which treat the interest in question as a qualified property right, are more on point, since the status Plaintiff claims to have lost is that of a beneficiary of an insurance policy.

**21.** In *Birnbaum*, this court held that the plaintiffs' claims of mental suffering qualified as "personal injury" under New York law and therefore satisfied the FTCA's "personal injury or death" requirement. 588 F.2d at 322. In reaching this conclusion, the court followed a methodology similar to the one we employ. That is, it collected New York cases

involving negligence and intentional torts-cases that were not necessarily related to the plaintiff's claim for intrusion-in which mental suffering, taken alone, was deemed a sufficient harm upon which to base an action, and, on the basis of those cases and a helpful statutory definition, it concluded that "New York recognizes as 'personal injury' mental suffering that results from a known category of tort." *Id.*

**22.** *Cf. DiMaria v. Silvester*, 89 F.Supp.2d 195, 196 nn. 2–3 (D.Conn.1999) (stating, without citation or explanation, that Connecticut does not recognize this tort).

208 Conn. 239, 543 A.2d 733, 735 (1988).[23]

It follows that, under either the uniform federal approach or the state-incorporation one, Plaintiff's claim satisfies the requirement of "injury or loss of property."

## II. The FTCA's Misrepresentation Exception

█ The government argues that Plaintiff's claim is barred by the FTCA's misrepresentation exception, which excludes "[a]ny claim arising out of ... misrepresentation." 28 U.S.C. 2680(h); *see also Neustadt*, 366 U.S. at 705, 81 S.Ct. 1294 (both negligent and intentional misrepresentation claims are barred). We agree with the district court's conclusion (expressed in its first opinion in this case) that this exception does not apply.[24]

The government's reasoning was rejected persuasively by the Fifth Circuit in *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510 (5th Cir.2000), the facts of which are strikingly similar to those of our case. In *Atkins*, the plaintiffs (the mother and sister of the deceased insured) alleged that a federal personnel clerk negligently failed to secure and retain a signed copy of a FEGLIA Designation of Beneficiary form, thus preventing the plaintiffs from becoming proper beneficiaries. The Fifth Circuit stated that the appropriate inquiry was whether the focal point of the plaintiffs' claim was (1) negligence in the communication of (or the failure to communicate) information or (2) negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance. *See id.* at 512. We conclude that, as in *Atkins*, the focal point of Plaintiff's claim is that the postal employees failed to forward the Designation of Beneficiary form to the Office of Personnel Management, an "operational task." *See also Block*, 460 U.S. at 297–98, 103 S.Ct. 1089 (holding that the plaintiff's "Good Samaritan" claim that defects in a house were partly attributable to the Farmers Home Administration's failure to inspect the house properly during construction did not fall within the misrepresentation exception, even though a different negligence theory focusing on the plaintiff's reliance on the Administration's inspection reports might have fallen within that exception). Accordingly, Plaintiff's claim is not barred by the misrepresentation exception.

## III. FEGLIA Preemption and Estoppel

█ The government makes several arguments related to FEGLIA. We will address them collectively. First, the government contends that, in enacting FEGLIA,

---

**23.** The government, citing *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 657 A.2d 212 (1995), argues that Connecticut would not recognize plaintiff's claim as one involving "property" because it does not involve damage or loss of use of tangible property. Leaving aside whether the government reads *Williams Ford* correctly—an issue on which we express no opinion-the argument proves too much, and hence fails. We have already shown that the FTCA broadly recognizes as an "injury or loss of property" harms that are intangible. *See supra* at 536. If Connecticut does not do so, then it must be the case that either the relevant definition of "injury or loss of property" is a uniform federal one, or that the definition that Connecticut would give to "property" is outside the permissible range of how states can define it for purposes of the FTCA. *Cf. De Sylva*, 351 U.S. at 581, 76 S.Ct. 974 (federal law only borrows meanings from state law that are within a permissible range).

**24.** This conclusion, and presumably that of the district court, is limited to the Plaintiff's "Good Samaritan" theory of negligence, which was pled in ¶ 17(a) of her Complaint. By contrast, the theories plead in ¶ 17(d)-(f), ¶ 37, and ¶ 38 are clearly barred by the misrepresentation exception, and appear no longer to be relied upon by Plaintiff.

a narrowly drawn, detailed statutory scheme for administering a federal life insurance program, Congress clearly evinced its intent that "FEGLIA should be the sole and exclusive mechanism for determining and deciding all claims founded upon FEGLIA." As a result, the government asserts, FEGLIA's remedies occupy the field and bar Plaintiff from seeking relief under the FTCA. *See, e.g., United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) (holding that 18 U.S.C. § 4126's remedies for prisoners injured as a result of prison work are exclusive of FTCA remedies). Second, the government argues that, even if Connecticut law permitted Plaintiff's claim, that law would be preempted by FEGLIA. According to this contention, FEGLIA's overall structure and, particularly, its state-law supercession provision[25] manifests Congress's "intent to preempt state-law tort actions for recovery of 'lost' FEGLIA benefits." The government claims that "[a]ny Connecticut cause of action that gives legal effect to [Muratti's] alleged intent that Plaintiff replace his nephew as the beneficiary would be inconsistent with FEGLIA

and would therefore be preempted." Finally, the government asserts that "[e]rroneous advice given by a Government employee to a benefits claimant cannot estop the Government from denying benefits not otherwise permitted by law. This action must fail because FEGLIA does not permit the payment of the FEGLIA benefits to Plaintiff."

Although these arguments vary in gloss, they fail for essentially the same reasons. Plaintiff's tort claim does not seek to function as an alternative enforcement mechanism to obtain benefits under a FEGLIA policy; nor does the claim seek to "give legal effect"—in any meaningful sense of that phrase—to Muratti's intent to substitute Plaintiff for his nephew as a beneficiary.[26] And, finally, Plaintiff's claim does not seek to estop the government from refusing to pay her FEGLIA benefits as though she were a proper beneficiary.[27] Quite simply, Plaintiff is not asking to be paid benefits under a FEGLIA policy; she concedes that she is not a proper beneficiary of such benefits. Indeed, that is precisely her point; her allegation is that the postal employees' negligence prevented

---

**25.** *See* 5 U.S.C. § 8709(d)(1) ("The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State ..., which relates to group life insurance to the extant that the law or regulation is inconsistent with the contractual provisions.").

**26.** Because Plaintiff does not claim that Muratti's intention that she become a beneficiary entitles her to benefits under the policy, it is irrelevant that FEGLIA establishes an "inflexible rule that a beneficiary must be named strictly in accordance with the statute, irrespective of the equities in a particular case," *Metropolitan Life Ins. Co. v. Manning*, 568 F.2d 922, 926 (2d Cir.1977) (holding that magistrate erred in considering extrinsic evidence of insured's intent in awarding proceeds of a FEGLIA policy and citing 5 U.S.C. § 8705(a), which states that "a designation,

change, or cancellation of beneficiary in a will or other document not so executed and filed [as described earlier in the statute] has no force or effect").

**27.** In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Supreme Court considered whether estoppel could run against the government for a claim for funds from the treasury. In rejecting the estoppel claim, the Court likened it to a claim for misrepresentation, which the Court noted was barred by the FTCA, *see* 28 U.S.C. § 2680(h). *Richmond*, 496 U.S. at 429–30, 110 S.Ct. 2465. Without deciding that an estoppel claim and a misrepresentation claim are always the same, our rationale for holding that the misrepresentation exception does not bar Plaintiff's claim, *see infra* Part II, is also a sufficient basis for rejecting the government's estoppel argument.

her from becoming a proper designee under the policy. She is seeking to be compensated for that negligence. If a friend of Murratti's had undertaken to file his Change of Beneficiary form and then had failed to perform this duty, Plaintiff could sue the friend on the same negligence theory (assuming it was available under the applicable state law) as that which she is now asserting against the government. Under those circumstances, it would be clear that Plaintiff would not be seeking to recover benefits under a FEGLIA policy. And that would be so even if the policy were in some sense the measure of Plaintiff's damages. The same holds true for her suit against the allegedly negligent government employees for whose default the government chose to answer under the FTCA.

For these reasons, and given the government's failure to cite any authority that remotely supports its position, we reject the government's arguments based on estoppel and FEGLIA preemption.

## CONCLUSION

We hold that the district court erred in determining that Plaintiff's claim is not one for "injury or loss of property" under the FTCA. Accordingly, we VACATE its grant of summary judgment and REMAND for further proceedings. In those proceedings, the district court will determine whether FTCA's interference-with-contract-rights exception applies; will decide—either on its own or after certifying to the Connecticut Supreme Court—whether Plaintiff's suit states a claim under Connecticut law; but will reject the government's arguments based on the FTCA's misrepresentation exception, FEGLIA preemption, and estoppel.

